REQUESTED BY: Dear Senator:
In your letter of August 17, 1978, you inform us that the Urban Affairs Committee, of which you are chairman, is studying the statutes dealing with sanitary and improvement districts, to determine whether further amendment of the applicable statutes is necessary.
You have asked us a number of questions about the present statutes. You asked first, [a]re S.I.D.'s allowed, vis-a-vis the developer, to avoid the payment of taxes by acquiring large areas such as golf courses and lakes and thus, due to their political subdivision status, terminate the tax on such land?'
We are somewhat at a loss to understand the significance of the phrase, `vis-a-vis the developer,' as used in your question. If the S.I.D. acquires such areas for purposes authorized by the statute, obviously title will be in the name of the S.I.D., and the `developer' will have nothing to do with it.
Section 31-727, 1977 Supp., authorizes the formation of a sanitary and improvement district for various purposes, including `to acquire, improve and operate public parks, play grounds and recreational facilities.' Obviously a golf course would qualify as a recreational facility, and we presume that a lake would, also, assuming that it was used for recreational purposes. Article VIII, Section 2 of the Nebraska Constitution provides that the property of the state and its political subdivisions shall be exempt from taxation. We are therefore of the opinion that property owned by a sanitary and improvement district would be exempt.
You next ask `who is the intended `public?'' Again, we are somewhat unsure of what your exact question is, but we assume you are asking whether the use of the recreational facility is, or can be, restricted to residents of the sanitary and improvement district.
Some credence might be given to the argument that such facilities were for the exclusive use of residents of the district by the provision in section 31-727 `for the joint acquisition of such facilities by two or more districts, for the joint use of the residents of the contracting districts.' This language tends to create the impression that residents of the districts, as opposed to the public at large, have some superior rights in such facilities.
We do not reach that conclusion, however. We believe that the word `public' as used in the statute, modifies `playgrounds and recreational facilities,' as well as `parks,' and we question whether a facility whose use was restricted to a particular group could properly be described as `public.' In 59 Am.Jur.2d 277, Parks, Squares, Etc., 16, we find:
 ". . . Such public parks are held not for the sole use of the people of a particular municipality, but for the use of the general public which the legislature represents. The use of the park is in kind analogous to those confessedly public. It closely resembles roads and bridges. These are open to general public travel without reference to the residence of the traveler. The enjoyment of a public park hardly can be restricted to residents of a particular city or town. . . ."
You ask whether S.I.D.'s are allowed to retail aggregate sand or gravel accumulated in the development of a lake. An S.I.D. has only such powers as are given it by statute, and those incidental thereto. It could not go into the sand and gravel business. However, if it produces sand and gravel as an incident to the development of a recreational lake, it could, of course, sell it. Such sand and gravel would, while in the hands of the S.I.D., be free from taxation.
Your fourth question is: `Once the district is established and after a plat is filed by lots and legals on completed property and approved by the planning commission and County Commissioner, can an S.I.D. file further deeds which do not follow the legals as most recently filed?'
We are not at all confident that we understand your question. When you speak of filing `other deeds,' this seems to imply acquisition of title by the S.I.D., which, of course, is not involved in an enlargement of the territory covered by the district. We think you mean to ask whether the S.I.D. can enlarge its territory. If so, the answer is that it can. Section 31-761 provides the procedure for doing so, either by a petition signed by all of the property owners to be annexed, approved by the trustees, or by petition signed by the majority of the property owners, and approved by the trustees after a public hearing.
You quote from section 31-736, as amended by LB 708, 1978 Session, which authorizes an S.I.D. to acquire by purchase, condemnation, or otherwise, real or personal property, right-of-way, and privileges, within or without its corporate limits, necessary for its corporate purposes. You ask what are its corporate purposes, as used in the above provision, and what would be considered an unjust taking of private property.
We can only refer you to section 31-727, 1977 Supp., which provides that an S.I.D. may be formed for the purposes listed therein. This section also provides that the articles of association shall state which of those listed shall be the purposes of the corporation, or whether all of them shall be corporate purposes. Therefore, any of the purposes listed in section 31-727 which are included in the articles of association would be the corporate purposes of the S.I.D. An unjust taking of private property would be a taking for a purpose not listed in the statute, or one not properly listed in the articles of incorporation.
You ask whether the initial corporate purpose is subject to change to allow for the replatting of lots for the creation of a lake or golf course within the S.I.D. We are not sure just what you mean by `replatting of lots,' but the creation of a lake or golf course would be included as proper purposes, as recreational facilities. Section31-727(3) provides in part:
 ". . . No corporation formed or hereafter formed shall perform any new functions, other than those for which the corporation was formed, without amending its articles of association to include the new function or functions."
This provision clearly contemplates that proper purposes not originally included in the articles of association may be brought in by amendment.
Your last question is, `Can the S.I.D. own and develop and acres by deed within the boundaries of the district?' We cannot answer that question, because we don't understand it. It seems to suggest that an S.I.D. might hold title to all of the land in the district, but we don't believe that is what you meant. If you will clarify your question we will try to answer it for you.